BERLINER HANDELS–GESELLSCHAFT
v. UNITED STATES.
No. 42452.

Court of Claims.
Dec. 4, 1939.

Raymond T. Heilpern, of New York City (Maxwell C. Katz, Otto C. Sommerich, and Katz & Sommerich, all of New York City, on the brief), for plaintiff.

S. E. Blackham, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert 'N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

WHALEY, Chief Justice.

Plaintiff brings this action to recover excise taxes levied on this foreign corporation by the Commissioner of Internal Revenue on the income of plaintiff derived from engaging in business in the United States during the years 1909, 1910, 1911, 1912, and the first two months of 1913, under Section 38 of the Tariff Act of 1909, which reads as follows:

"That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States or of any State or Territory of the United States or under the Acts of Congress applicable to Alaska or the District of•Columbia, or now or hereafter organized under the laws of any foreign country and engaged in business in any State or Territory of the United States or in Alaska or in the District of Columbia, shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company, equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as

dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax hereby imposed; or if organized under the laws of any foreign country, upon the amount of net income over and above five thousand dollars received by it from business transacted and capital invested within the United States and its Territories, Alaska, and the District of Columbia during such year, exclusive of amounts so received by it as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax hereby imposed." 36 Stat. 112.

This section levies a capital-stock tax on domestic and foreign corporations of "one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year * * *" and in the case of plaintiff corporation upon the "amount of net income over and above five thousand dollars received by it from business transacted *and capital invested* within the United States * * *." [Italics ours.]

The real question presented is, under the facts of this case: Was the plaintiff "engaged in business" within the meaning of the foregoing statute and therefore subject to the excise tax for engaging in business in this country? The Commissioner of Internal Revenue found that plaintiff was subject to the tax and denied the claim for refund.

■ A capital-stock tax is a tax upon the privilege of doing business in a corporate capacity and is based on income derived from operating as a corporation whereas an income tax is based on the receipt of income however derived. Flint v. Stone Tracy Company, 220 U.S. 107, 31 S. Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

■■ The phrase "engaged in business" is a most comprehensive term and embraces everything which a corporation may be engaged in for profit. When a corporation is organized for the purpose of profit-making activities, and engages in such activities, it is subject to the capital-stock tax. It is not denied that plaintiff engaged in numerous and sundry activities in the pursuit of profit and gain, and if it were a domestic corporation there could be no question that it was subject to the tax.

Plaintiff did not engage in a single activity nor did it engage in sporadic activities, but, on the contrary, during the years in question its activities were continuous and involved large sums of money and numerous and sundry transactions, all of which were for the purpose of gain and profit. Plaintiff did not maintain an office or place of business in the United States, its territories, or possessions, and did not have a general agent in this country. All of its purchases and sales or other disposition of securities, its collections, and deposits of interest and dividends, and the safekeeping of securities were handled by bankers, and brokerage and investment houses in New York City. No purchases, sales, or other disposition of such securities were made without special instructions from the bank in Berlin. Plaintiff maintained accounts in various stock brokerage houses in the City of New York, several of which did a private banking business. Plaintiff loaned moneys to these firms and at times borrowed from or through them, paying and receiving interest. It maintained purchasing accounts and gave its orders for purchases and sales of securities. It purchased stock on joint account with another firm and in these transactions contributed over two million dollars. Plaintiff entered into a joint account with another firm for the purpose of dealing in New York City bonds. It acted jointly with others in a banking group, as readjustment and syndicate managers, in the union of two Mexican railway companies, participating in the profits, losses, and commissions. It participated in syndicates underwriting the issuance of new securities upon the invitation of banking and investment houses which formed these syndicates. Plaintiff advertised in this country for business, giving its home address in Berlin. It purchased and paid for, out of its own funds, a limited partnership for one of its officers in Hallgarten & Company, but the profits earned by Hallgarten & Company, to which this limited partner was entitled, were not paid to the limited partner, but all of these profits were paid directly to plaintiff.

A corporation cannot enter into a partnership and therefore it was necessary to name one of its officers as a partner but, as a matter of fact, and what actually occurred was, plaintiff provided the funds with which this partnership was purchased and received all the profits earned by this partner who was an officer of plaintiff. In substance, plaintiff was the real partner but, in form, the officer of plaintiff was named as the partner. Hallgarten & Company received and paid interest, loaned money, entered into joint accounts for deal-

ing in New York City bonds, acted jointly with other banking groups as readjustment and syndicate managers in the union of two Mexican railway companies and participated in the profits, losses, and commissions, in the proportions agreed upon, and kept on deposit securities for plaintiff's account.

It is apparent from these many profit-making activities through Hallgarten & Company and the varied nature of these transactions that this company, in which plaintiff's officer held a limited partnership, was the one through which plaintiff chiefly conducted its business.

Plaintiff's sole contention is that, having no place of business in the United States and no office or agent in this country, it is immaterial what amount of business it may do through several bankers, brokerage and investment houses or otherwise, and it is not "engaged in business" because there is no one in this country on whom process may issue. An examination of the statute shows that there is no difference made between a domestic and a foreign corporation which would give the latter a distinct advantage over the former because of the fact it did not maintain an office or agent or have a place of business in this country.

We feel that the intention of Congress in levying this tax was to require a corporation engaged in business to pay for the privilege, irrespective of the fact of whether or not it maintained a place of business or had an office or agent in this country. It comes down to a question of the amount of business done. A single activity would not constitute "engaging in business." United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35, 35 S.Ct. 499, 59 L.Ed. 825.

But we have no such case here. It is admitted that during the four years and two months in question plaintiff was continuously engaged in business activities of various sorts involving millions of dollars and numerous and frequent transactions with many firms and banks.

Plaintiff mainly relies on the case of Union Internationale de Placements v. Hoey, 2 Cir., 96 F.2d 591. The opinion was written by Circuit Judge Martin Manton and although the term "engaged in business" is most comprehensive for taxation purposes, nevertheless, he holds it is essential that a foreign corporation have a place of business or a branch office or an agent or representative in this country on whom process can be served, no matter how numerous and continuous its activities in seeking gain and profit and how large and multifarious its investments, to subject it to an excise tax levied on foreign corporations for the privilege of doing business. We do not feel that this is sine-qua-nonical. The activities of the plaintiff in the instant case differ so widely from those in the case decided by Judge Manton that there is no parallel.

It has been held that each case should stand on its own facts. In Von Baumbach v. Sargent Land Company, 242 U.S. 503, 516, 37 S.Ct. 201, 204, 61 L.Ed. 460, in dealing with former cases, the Supreme Court said:

"* * * The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

Plaintiff was not engaged solely in banking business, but its transactions were more extensive and varied. Bank of America v. Whitney Cent. Nat. Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594.

There is not before us the question of service of process in order to gain jurisdiction over plaintiff, but the right to collect the excise tax based on the privilege to corporations to engage in business for the purpose of gain or profit.

We feel that the facts clearly show that the continuous and active participation in numerous and frequent transactions and various business undertakings constituted being "engaged in business," as defined by the statute, and therefore, the plaintiff can not recover and its petition is dismissed. It is so ordered.